1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   RONALD DEAN ISABEL,            )      No. CV 11-03217 CW
                                     )
13                  Plaintiff,       )      DECISION AND ORDER
             v.                      )
14                                   )
     MICHAEL J. ASTRUE,              )
15   Commissioner, Social           )
     Security Administration,       )
16                                   )
                    Defendant.       )
17   _____)

18

19        The parties have consented, under 28 U.S.C. § 636(c), to the

20   jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21   review of the Commissioner's denial of disability insurance benefits

22   ("DIB") and supplemental security income ("SSI") benefits.  For the

23   reasons stated below, the Magistrate Judge finds that this matter

24   should be reversed and remanded for further administrative proceedings

25   consistent with this decision and order.

26                        **I.  BACKGROUND**

27        Plaintiff, Ronald Dean Isabel, was born on October 14, 1979, and

28   was 29-years old at the time of his administrative hearing.

                                     1

[Administrative Record ("AR") 153.] He has at least a high school education and past work experience as Construction Superintendent.[AR 165-171.]  Plaintiff alleges disability due to headaches, and due to extreme pain in his neck, lower/mid-level back, left shoulder, left wrist, and head. [AR 165.]

## II.  PROCEEDINGS IN THIS COURT

On April 15, 2011, the complaint was filed. [Docket no. 1.] On October 26, 2011, Defendant filed an answer and lodged a copy of the certified administrative record. [Docket nos. 12, 13.] On December 22, 2011, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. [Docket no. 14.] This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

On May 3, 2007, Plaintiff filed an application for a period of DIB and SSI alleging disability beginning March 22, 2006. [AR 140-56.] After the application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.  On April 27, 2009, Plaintiff appeared at a video hearing conducted by Administrative Law Judge ("ALJ") Mary L. Everstine.  [AR 47-70].] At the hearing Plaintiff amended the alleged onset date to February 2, 2007. Plaintiff appeared with counsel, and testimony was taken from Plaintiff, and lay witness (Plaintiff's mother), Carol S. Hawkins. Plaintiff submitted additional medical documentation and a supplemental video hearing was held on July 21, 2009.  At the supplemental hearing, the ALJ took testimony from vocational expert ("VE") Elizabeth Cireeso. [AR 38-45.]

The ALJ ultimately denied benefits in an administrative decision

2

1  dated September 17, 2009.  [AR 22-33.]  When the Appeals Council

2  denied review on February 25, 2011, the ALJ's decision became the

3  Commissioner's final decision.  [AR 9-14.]  This action followed.

### IV.  STANDARD OF REVIEW

5  Under 42 U.S.C. § 405(g), a district court may review the

6  Commissioner's decision to deny benefits.  The Commissioner's (or

7  ALJ's) findings and decision should be upheld if they are free of

8  legal error and supported by substantial evidence.  However, if the

9  court determines that a finding is based on legal error or is not

10  supported by substantial evidence in the record, the court may reject

11  the finding and set aside the decision to deny benefits.  See Aukland

12  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

13  Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

14  F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

15  1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

16  1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

17  v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

18  "Substantial evidence is more than a scintilla, but less than a

19  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

20  which a reasonable person might accept as adequate to support a

21  conclusion."  Id.  To determine whether substantial evidence supports

22  a finding, a court must review the administrative record as a whole,

23  "weighing both the evidence that supports and the evidence that

24  detracts from the Commissioner's conclusion."  Id.  "If the evidence

25  can reasonably support either affirming or reversing," the reviewing

26  court "may not substitute its judgment" for that of the Commissioner.

27  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

28

3

## V.   <u>DISCUSSION</u>

### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as amended</u> April 9, 1996); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107

4

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and that he had not engaged in substantial gainful activity since February 2, 2007, the amended onset date (step one) [AR 24]; that Plaintiff had the "severe" impairments of: status post right knee acromioclavicular reconstruction and partial meniscectomy, left shoulder tendinopathy,

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

cervical and lumbar spondylosis, chronic migraine headaches, status post closed head injury with residual seizures, depressive disorder, and obsessive-compulsive disorder traits (step two) [AR 25-28]; and that Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three) [AR 28-29]. The ALJ then found that Plaintiff had the RFC to perform a wide range of sedentary work.[2] [AR 29.] She found that this RFC precluded Plaintiff from performing his past relevant work as a construction superintendent (step four). [AR 31.] The ALJ found, however, that given Plaintiff's RFC, age (a "younger individual age 18-44"), education (at least a high-school education) and ability to communicate in English, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (step five). [AR 32-33.]  Accordingly, Plaintiff was found not "disabled" as defined by the Social Security Act. [AR 33.]

**C. ISSUES IN DISPUTE**

The parties dispute whether the ALJ adequately summarized the medical evidence of record and whether:

1.   The ALJ failed to state clear and convincing reasons for rejecting the opinions of plaintiff's treating physicians and consultative examiner Ratner;

2.   The ALJ's offered germane reasons for rejecting the testimony of the plaintiff's mother;

3.   The ALJ offered legally sufficient clear and convincing

_____

[2]   Specifically, the ALJ noted that Plaintiff could perform a range of sedentary work further limited as follows: only occasional overhead reaching; a preclusion from working at unprotected heights or operating hazardous machinery; a limitation to simple, repetitive tasks, and minimal interaction with the public. [AR 30.]

1          reasons for rejecting plaintiff's testimony; and

2      4.   The ALJ properly assessed Plaintiff's RFC.

3      The first issue is dispositive.

4      **D.   ISSUE ONE:**

5      In issue one, Plaintiff contends the ALJ failed to properly

6  assess the opinions of two treating physicians, Dr. Francis Lagattuta

7  and Dr. Strodtbeck, both of whom opined that Plaintiff does not retain

8  the ability to perform even a limited range of sedentary work, and of

9  consultative examining psychologist Dr. Lawrence Ratner. He also

10 contends the Appeals Council failed to adequately assess the opinion

11 and reports of treating psychiatrist Dr. Beverly Ramos, whose records

12 were submitted after the ruling by the ALJ and were considered by the

13 Appeals Council. [AR 13-14.]

14     As an initial matter, the assessment of Dr. Ratner's report is

15 legally sufficient. Plaintiff complains that the ALJ ignored aspects

16 of Dr. Ratner's findings. [See JS at 9-10.] Ultimately, however, Dr.

17 Ratner concluded that Plaintiff's mental impairments led to the

18 following functional limitations: a moderate restriction in ability to

19 execute daily tasks due to pain; a possible moderate limitation in

20 persistence and pace due to depression and pain; obsessive/compulsive

21 traits. He opined there were no limitations in the following areas:

22 social skills; concentration; understanding, remembering and carrying

23 out simple instructions; responding appropriately to changes in work

24 routines or rules; managing funds. [AR 399.] In the VE hypothetical,

25 the ALJ limited Plaintiff to simple, repetitive tasks and minimal

26 interaction with the public. [AR 30, 42.] Given that Dr. Ratner opined

27 Plaintiff remains able to understand and carry out simple

28 instructions, the limitations included in the VE hypothetical

7

adequately encompass Dr. Ratern's findings. See <u>Stubbs-Danielson v.</u>
<u>Astrue</u>, 539 F.3d 1169, 1173-74 (9th Cir. 2008)(holding that a
restriction to simple, repetitive tasks adequately captures
restrictions related to concentration, persistence, or pace when the
physician noted that despite those deficiencies the plaintiff remains
able to carry out simple instructions)(citations omitted).

However, the court is unable, with any confidence, to reach the
same conclusion with regard to the Commissioner's assessment of the
opinions of Plaintiff's treating doctors, Lagattuta, Strodtbeck, and
Ramos.

Generally, the Social Security Administration favors the opinion
of a treating physician over non-treating physicians. See 20 C.F.R. §§
404.1527, 416.927. If a treating physician's opinion is not given
controlling weight, it is because it is not "well-supported," or
because it is "inconsistent with other substantial evidence in the
record." <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007). "[A]n ALJ
may discredit treating physicians' opinions that are conclusory,
brief, and unsupported by the record as a whole," or "by objective
medical findings." <u>Batson v. Commissioner of the Social Security</u>
<u>Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the
ALJ did not err in giving minimal evidentiary weight to the opinions
of the plaintiff's treating physician where opinion was in the form of
a checklist, did not have supportive objective evidence, was
contradicted by other statements and assessments of the plaintiff's
medical conditions, and was based on the plaintiff's subjective
descriptions of pain)(citation omitted).

"The ALJ may disregard the treating physician's opinion whether
or not that opinion is contradicted." <u>Andrews v. Shalala</u>, 53 F.3d

8

1035, 1041 (9th Cir. 1995)(citation omitted). A medical opinion is considered to be "uncontroverted" if all the underlying medical findings in the record of plaintiff's physical impairments are similar. Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  To reject the uncontroverted opinion of plaintiff's physician, the ALJ must present clear and convincing reasons for doing so.  Andrews v. Shalala, 53 F.3d at 1041 (citation omitted). Even if the treating physician's opinion is contradicted by other doctors, however, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for so doing which are supported by substantial evidence. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(citing Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The Commissioner did not meet this burden here.

First, the Appeals Council's evaluation of Dr. Ramos's reports is legally insufficient.  Dr. Ramos treated Plaintiff for psychiatric complaints from 2008 to 2010, and her treatment notes and assessment of Plaintiff's functional ability were incorporated into the administrative record by the Appeals Council. The Appeals Council cursorily rejected Dr. Ramos's opinion that Plaintiff suffers from multiple extreme mental functioning limitations based upon its conclusion that, while Dr. Ramos's findings were "consistent" with those of consultative examiner Dr. Ratner's, and findings noted in the state agency review reports [AR 390-400, 400-08, 409-22], her opinion

alone noted "extreme" mental functional limitations. In fact, however, the supporting findings of Dr. Ramos diverge from those of Dr. Ratner in at least one significant respect: unlike Dr. Ratner (who noted that Plaintiff was able to understand and carry out simple instructions) Dr. Ramos's treatment notes reflect that Plaintiff had a "terrible understanding of simple instructions." [AR 752.] In light of the Appeals Councils' bare-bones analysis of Dr. Ramos's reports, it is impossible for the court to gauge whether this finding is indicative of a material inconsistency between Dr. Ramos's reports and her functional assessment, and whether there nonetheless remain any significant and legitimate bases to reject Dr. Ramos's opinion.

The ALJ's treatment of doctors Lagattuta's and Strodtbeck's reports are similarly deficient.  For example, the ALJ summarized Dr. Lagattuta's records (which span from 2007 to 2009) as follows:

> [Plaintiff] alleged lumbar pain.  He was diagnosed with lumber spondylosis and treated with Methadone. [Plaintiff] also alleged headaches and neck pain. A July 2007 EMG and nerve conduction study was normal. There was no evidence of radiculopathy. Dr. Laguttata reported essentially normal medical examinations and treated [Plaintiff] conservatively. He did not impose any specific functional limitations on [Plaintiff.]

[AR 28.] The ALJ then rejected Dr. Lagattuta's restrictive functional assessment [AR 743] on the basis that it did not specify what Plaintiff's condition was or discuss his objective findings, and on the basis that his assessment is thus "totally unsupported by any clinical findings." [AR 28.] As Plaintiff points out in the Joint Stipulation, however, Dr. Lagattuta treated Plaintiff more extensively and diagnosed Plaintiff with a greater range of problems than the

10

hearing decision reflects. For example, the ALJ did not address the fact that Dr. Lagattuta ordered bilateral medial branch blocks and caudal epidurals. [E.g., AR 228, 324, 339, 355, 519-22.] Nor does the hearing decision mention, for example, that Dr. Lagattuta assessed Plaintiff with decreased peroneal motor amplitudes bilaterally. [AR 540-41.] While it is possible that the ALJ's ultimate characterization of Dr. Lagattuta's functional assessment – as unsupported by his treatment notes – is correct, the hearing decision does not permit such a finding.

The ALJ's similarly skeletal assessment of treating physician Dr. Strotbeck's opinion is particularly troubling given that Dr. Strotbeck's restrictive functional assessment [AR 741] parallels that of Dr. Lagattuta [AR 742].

It is the Commissioner's obligation to make full and detailed findings of fact which are essential to the conclusion so that a reviewing court may determine the basis for the decision and whether substantial evidence supports the Commissioner's decision. See Lewin v. Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981). When, as here, the Commissioner has failed to meet that burden, remand is appropriate.

### F.   REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). Where, as here, however, there are outstanding issues that must be

resolved before a determination can be made, and it is not clear from the record that a finding of disabled would be required if all the evidence were properly evaluated, remand is appropriate. Id.

Here, as discussed above, the Commissioner's assessment of the findings and opinions of various treating physicians was legally deficient. The court is thus unable to conclude that the evaluation of the medical record as a whole, the credibility assessments (which were primarily based upon a comparison between the medical record and the subjective testimony), or the RFC finding are supported by a legally sufficient quantum of evidence, or whether Plaintiff is disabled under the Act. In this case, remand for further administrative proceedings is appropriate. See e.g., Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011)(remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability).

### VI.   ORDERS

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **REVERSED.**

2.   This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. §405(g), for further administrative proceedings consistent with instructions set forth in the body of the decision.

3.   The Clerk of the Court shall serve this Decision and Order and the Judgement herein on all parties or counsel.

DATED: March 27, 2012



                        CARLA M. WOEHRLE
                     United States Magistrate Judge

12